<u>NOT FOR PUBLICATION</u>

| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
|---|---|
| In Re:<br><br>Frank D. Formica,<br><br>Debtor. | Case No.:    20-23404-ABA<br><br>Adv. No.:    21-1191-ABA |
| Parke Bank, Plaintiff<br><br> v.<br><br>Frank D. Formica, Defendant. | Chapter:    7<br><br>Judge:    Andrew B. Altenburg, Jr. |

## MEMORANDUM DECISION

Before the court is a Motion for Summary Judgment filed by defendant Frank D. Formica. Plaintiff Parke Bank commenced this adversary proceeding seeking to deny Mr. Formica a discharge pursuant to section 727(a)(4)(A) of the Bankruptcy Code, alleging that he made material and intentional false oaths by failing to disclose on his schedules and in certifications the existence of certain liens on his former residence. For the reasons that follow, the court finds that as the bankruptcy estate was not harmed, summary judgment must be granted.

## JURISDICTION AND VENUE

This matter before the court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J) and (O), and the court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012, referring all bankruptcy cases to the bankruptcy court. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## PROCEDURAL HISTORY

Mr. Formica filed a no asset chapter 7 bankruptcy case on December 9, 2020. Bankr. No. 20-23404-ABA, Doc. No. 1. A section 341 meeting of creditors took place on January 7, 2021. *Id.*, Doc. No. 3. On January 14, 2021, Mr. Formica filed a Motion to Compel Sale of Real Estate, seeking to be heard on shortened time, which was granted. *Id.*, Doc. Nos. 12, 13, 15. On January 16, 2021, Mr. Formica filed an amended certification in support of his Motion to Compel Sale. *Id.*, Doc. No. 17. Fulton Bank and the chapter 7 trustee filed responses. *Id.*, Doc. Nos. 24, 25. On

January 27, 2021, the court entered a Consent Order for Abandonment and Denying the Motion to Compel Sale. *Id.*, Doc. No. 26.

Parke Bank filed this adversary proceeding on March 7, 2021. Adv. Proc. No. 21-1191-ABA, Doc. No. 1 ("Complaint"). Mr. Formica answered on April 9, 2021. *Id.*, Doc. No. 5. A mediator was appointed by order entered June 10, 2021. *Id.*, Doc. No. 6. Mediation was reported unsuccessful on August 19, 2021. *Id.*, Doc. No. 11. On October 11, 2021, Mr. Formica filed this Motion for Summary Judgment. *Id.*, Doc. No. 12. Parke Bank filed opposition and a Motion to Extend Discovery on November 2, 2021. Doc. Nos. 15, 16. Mr. Formica filed a response on November 6, 2021 and opposition to the Motion to Extend Discovery on November 16, 2021. Doc. Nos. 17, 18. On November 19, 2021, Parke Bank filed a response to the opposition to the Motion to Extend Discovery. Doc. No. 19. Hearings were held November 9 and November 23, 2021.[1] The matter is ripe for disposition.

## FINDINGS OF FACT

The relevant undisputed and/or indisputable facts in this Adversary Proceeding are as follows:

Mr. Formica filed a no asset chapter 7 case on December 9, 2020. Bankr. No. 20-23404-ABA ("Main Case"), Doc. No. 1. He disclosed his residence as 618 Hay Road, Absecon, New Jersey (the "Absecon Property"). *Id.*, p. 2. This property would later be revealed as solely owned by Mr. Formica's wife, Amy. Mr. Formica disclosed the couple's former residence, located at 153 Glenside Avenue, Linwood, New Jersey (the "Linwood Property"), as owned by both of them and subject only to a mortgage held by Parke Bank. *Id.*, pp. 10, 19. Mr. Formica claimed an exemption in the Linwood Property of $23,675.[2] *Id.*, p. 17.

On or about November 13, 2020, Mr. Formica executed an Agreement of Sale to sell the Linwood Property for $440,000 (the "November Sale"). Adv. Proc. 21-1191-ABA, Doc. No. 1 ("Complaint"), ex. G. A Commitment for Title Insurance was issued by American Land Title Association, with a judgment conducted by Charles Jones LLC, in connection with the sale. Doc. No. 1, ex. H. This Commitment identified a $320,000 mortgage on the Linwood Property executed by Mr. Formica in favor Parke Bank, a $150,000 mortgage executed by Amy Formica in favor of Nicolette Group, LLC, and a $44,557 judgment against Mr. Formica and his company, John Galt LLC. *Id.* Sometime in November, the sale was cancelled.

---

[1] Because part of Parke's response is a request to extend time for discovery, the court took it and the Motion for Summary Judgment under advisement together. Under separate order, the Motion to Extend Discovery will be denied.

[2] Mr. Formica claimed this exemption pursuant to 11 U.S.C. § 522(d)(1), however, that exemption is for property that the debtor uses as a residence. Mr. Formica no longer lived at the Linwood Property at the time of filing, having moved to the Absecon Property. He instead could have claimed an exemption pursuant to section 522(d)(5), which allows a debtor to exempt their "aggregate interest in any property, not to exceed in value $1,325 plus up to $12,575 of any unused amount" of the section 522(d)(1) exemption. Mr. Formica had not used any of the section 522(d)(1) exemption, thus could exempt $12,575 of his interest in the Linwood Property.

On December 22, 2020, Mr. and Mrs. Formica entered into a new contract to sell the Linwood Property for $460,000 (the "December Sale"). *Id.*, ex. K. A title search was issued by First American Title Insurance Company in connection with that sale. Doc. No. 12, ex. A. It identified the $320,000 Parke Bank mortgage only. *Id.*[3]

On January 14, 2021, Mr. Formica filed a Motion to Compel Sale of the Linwood Property on shortened time, indicating that the only mortgage on the property was Parke's in the approximate amount of $306,000, thus there would be equity for other creditors. *Id.*, ¶¶ 39, 41.[4]

Parke's counsel then contacted Mr. Formica's counsel to inquire about other liens not mentioned on the petition, Motion to Compel, or Mr. Formica's certification. *Id.*, ¶ 46. On January 16, 2021, Mr. Formica filed an amended certification stating that

> It has recently come to my attention that there are three other liens against the Property: one is a mortgage given by my wife Amy to Nicolette Property Group, LLC in the face amount of $150,000, . . . the second is a judgment lien by Fulton Bank related to my bankrupt business in the amount of approximately $45,000 . . . and the third is a mortgage recorded by my ex-wife Ruth Formica in the amount of $181,535 . . . .

*Id.*, ¶ 48 (citing Main Case Doc. No. 17, ¶ 10).[5]

The Fulton judgment was entered by default on August 29, 2019. Complaint, ex. D. The Nicolette mortgagee was executed on May 21, 2020. *Id.*, ex. E. The Ruth Formica mortgage was executed by Mr. Formica on November 23, 2020 and recorded on December 8, 2020. *Id.*, ex. I.

The chapter 7 trustee filed a response to the Motion to Compel, indicating that even if he could avoid two of the liens,[6] less than $40,000 would be available for distribution to unsecured

---

[3] This Commitment has the Parke Bank mortgage executed by both Frank and Amy Formica. *Id.*

[4] In chapter 7, the trustee, not the debtor, "collect[s] and reduce[s] to money the property of the estate. . . ." 11 U.S.C. § 704(a)(1). Thus, Mr. Formica's entry into the December Agreement of Sale was improper. *In re Mejia*, 576 B.R. 464, 471 (Bankr. S.D.N.Y. 2017); *In re Bunn-Rodemann*, 491 B.R. 132, 135 (Bankr. E.D. Cal. 2013) ("In filing the Chapter 7 case, the Debtor transferred the overencumbered Property to the estate, giving control to the Chapter 7 Trustee to administer this Property as part of the bankruptcy estate."). The solution may be for the trustee to substitute in as the seller of the property (when there is equity in the property that could be used to pay creditors), or for the debtor to file a motion to compel the trustee to abandon the property (when there is no equity). *See In re Mejia*, 471; 11 U.S.C. § 554.

[5] Mr. Formica admits only that he signed an Amended Certification stating in part, "(i)t has recently come to my attention that there are three other liens against the Property." Answer, Doc. No. 5, ¶ 48. But the document speaks for itself.

[6] The Nicolette mortgage might have been avoided as a fraudulent transfer, as Mr. Formica did not receive reasonably equivalent value in exchange, 11 U.S.C. § 548(a)(1)(B), and the Ruth Formica claim could have been avoided either as a preference as granted within 90 days prepetition or as a fraudulent transfer as the mortgage was recorded postpetition. 11 U.S.C. § 547(b), 544(a). The Ruth Formica claim would then remain as an unsecured debt against the debtor's estate, while the Nicolette claim would not be a claim in the bankruptcy estate at all.

creditors on claims totaling in the millions, and he therefore would be inclined to abandon the Linwood Property to the debtor. Main Case Doc. No. 25. Specifically, the trustee stated:

> If I presume that there may be net equity of $40,000.00, as of the dictation of this letter, I am inclined to file a Notice of Abandonment. If the debtor's unsecured creditor body was $80,000.00, unsecured creditors would receive a meaningful dividend, even after consideration of my trustee commission and potential legal expenses. However, the creditor body in this case is very large, especially after considering amendments recently filed by the debtor. As a result, if I were to sell the property, creditors would likely receive a miniscule dividend.

*Id.*, p. 1.

After a hearing held on January 26, 2021, at which counsel for the debtor, Parke, Fulton, Ruth Formica, and the trustee appeared (the debtor had not served Nicolette), the court indicated that, because the debtor had no right to enter into the sale agreement and there was no equity for the bankruptcy estate, it could not approve the sale.

The next day, all of the parties, including Anthony Miranda on behalf of Nicolette, filed a Consent Order whereby the court denied the Motion to Compel Sale, the trustee abandoned the Linwood Property to the debtor, and the parties permitted the debtor to sell the property. Main Case Doc. No. 26. The sale closed on January 29, 2021 with Parke Bank received $334,919, Fulton Bank receiving $30,000, Nicolette receiving $26,628, and Ruth Formica receiving $36,628. *Id.*, Doc. No. 29-1, ex. T.[7]

### DISCUSSION

Mr. Formica seeks summary judgment in his favor, dismissing the complaint. He argued that Parke Bank set forth no evidence supporting its claim that he intentionally failed to disclose liens encumbering his real property. In a response to Parke's Motion to Extend Time for Discovery, he also argued that Parke did not allege how Mr. Formica's actions hindered, delayed or defrauded creditors. Adv. Proc. Doc. No. 18.

---

[7] The Formica/Parke Bank relationship has a tortured history in this bankruptcy case. As mentioned above, Parke Bank received $10,000 above the amount owed on its mortgage on the Linwood Property, arguing that it was cross-collateralized with a $1,100,000 commercial loan extended to Mr. Formica and his wholly-owned company, John Galt, LLC. Mr. Formica later filed a Motion for Sanctions against Parke, arguing that the loans were not cross-collateralized and therefore the demand for payment beyond the residential loan constituted a violation of the automatic stay. Main Case Doc. No. 29. This court found that the "cross-default" clause relied upon by Parke, rather than being a floating lien, was a dragnet clause, and therefore Parke was wrong to demand the additional payment. Main Case Doc. No. 40. However, because Mr. Formica was not directly or indirectly coerced or harassed by Parke— both his counsel, Ruth Formica's counsel, and counsel that Mr. Formica independently consulted with believed Parke to be in the wrong—and he agreed to make the payment in order to close the sale, Mr. Formica essentially consented to the stay-violating action. *Id.* In addition, the $10,000 payment was taken from the payoff of Nicolette, an entity with a claim against Amy Formica, thus there was no injury to Frank. *Id.* But because the court had found that Parke was wrong to demand the payment, it denied a subsequent Motion for Sanctions under Rule 9011 filed by Parke against the debtor's attorney for filing the stay violation motion. Doc. No. 44.

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." *Knauss v. Dwek*, 289 F. Supp.2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The court must construe facts and inferences in a light most favorable to the non-moving party. *See Am. Marine Rail NJ, LLC v. City of Bayonne*, 289 F.Supp.2d 569, 578 (D.N.J. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986)). "Only evidence admissible at trial may be used to test a summary judgment motion. Thus, evidence whose foundation is deficient must be excluded from consideration." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 471 (3d Cir. 1989) (citations omitted).

The moving party must make an initial showing that there is no genuine issue of material fact. *See Knauss*, 289 F. Supp.2d at 549 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then shifts to the non-moving party to "'make a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Cardenas v. Massey*, 269 F.3d 251, 254–55 (3d Cir. 2001) (questioned on other grounds) (quoting *Celotex Corp.*, 477 U.S. at 322). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48 (emphasis in original). An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-moving party. *See id.* at 248. Furthermore, a material fact is determined by the substantive law at issue. *See Crane v. Yurick*, 287 F.Supp.2d 553, 556 (D.N.J. 2003) (citing *Anderson*, 477 U.S. at 248). A fact is "material" if it might affect the outcome of the suit under governing law. *Id.* Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 248 (citation omitted). Once the movant carries its burden, if the non-moving party fails to properly address the movant's factual assertion, the court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

However, even if material facts remain disputed, summary judgment may be proper if, after all inferences are drawn in the non-moving party's favor, the moving party is entitled to judgment as a matter of law. *Id.* at 248–50. Such a judgment is appropriate "as a matter of law" when the non-moving party has failed to make an adequate showing on an essential element of his or her case, as to which he or she has the burden of proof. *See Celotex Corp.*, 477 U.S. at 322–23. When one party moves the court for summary judgment, Federal Rules of Civil Procedure 54(c) and 56, taken together, permit the court to enter summary judgment on behalf of the non-movant, even if the non-movant has not filed a cross-motion for summary judgment. *See Peiffer v. Lebanon Sch. Dist.*, 673 F. Supp. 147, 151–52 (M.D. Pa. 1987) (citation omitted). On the other hand, a court must deny a motion for summary judgment when a genuine issue of material fact remains to be tried, or where the moving party is not entitled to a judgment as a matter of law.

Parke seeks denial of discharge pursuant to section 727(a)(4)(A). That section provides that a debtor is ineligible for a discharge if he or she knowingly and fraudulently, or in connection with the case made a false oath or account. 11 U.S.C § 727(a)(4)(A). A plaintiff must prove: "(1)

the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Keeney v. Smith (In re Keeney),* 227 F.3d 679, 685 (6th Cir. 2000).

As to the last element, the "issue is not merely the value of the omitted assets or whether the omission was detrimental to creditors," but whether the subject "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Loyd v. Herchakowski (In re Herchakowski),* No. 10–49287, 2013 WL 620291, at *5 (Bankr. D.N.J. Feb. 19, 2013) (citing 4 Collier on Bankruptcy, ¶ 727.04[1], at 727–59; *Cadle Co. v. Zofko (In re Zofko),* 380 B.R. 375 (W.D. Pa. 2007)). The purpose of section 727(a)(4)(A) is to insure that the debtor has made "honest and accurate disclosure of his financial circumstances so the bankruptcy trustee and creditors have sufficient information for the proper administration of the chapter 7 case, without having to conduct costly investigations." *Id.* (citing *Wachovia Bank v. Spitko (In re Spitko),* 357 B.R. 272, 312 (Bankr. E.D. Pa. 2006)).

Reckless disregard for the truth or falsity of a statement is also sufficient to satisfy the knowledge prong. *Lloyd v. Herchakowski (In re Herchakowski),* No. 10–49287, 2013 WL 620291, at *3 (Bankr. D.N.J. Feb. 19, 2013) (citing *Neugebauer v. Senese (In re Senese),* 245 B.R. 565 (Bankr. N.D. Ill. 2000)).

> The Third Circuit has admonished that denying a debtor his discharge "is an extreme step and should not be taken lightly." *In re Belanger,* 524 B.R. 634, 637 (Bankr. E.D. Pa. 2015) (quoting *Rosen v. Bezner,* 996 F.2d 1527, 1531 (3d Cir. 1993). To prove a claim under § 727(a)(4)(A), the evidence must show that the debtor intended to defraud his creditors or estate. *Id.* (Citing *In re Giquinto,* 388 B.R. 152, 179 (Bankr. E.D. Pa. 2008). In short, "... the objecting party must prove an 'actual intent on the part of the bankrupt to hinder, delay, and defraud his creditors.'" *In re Park,* No. 13-34203, 2016 WL 693492, at *3 (D.N.J. Feb. 18, 2016) (quoting *Georges v. Solodky (In re Georges),* 138 Fed. Appx. 471, 472 (3d Cir. 2005)). Omissions or false statements caused by an honest mistake or inadvertence are not sufficient to deny a discharge. *In re Spitko,* 357 B.R. 272, 312 (Bankr. E.D. Pa. 2006) (citing *In re Georges,* 138 Fed. Appx. at 471); *See also Melarango v. Ciotti (In re Ciotti),* 448 B.R. 694, 704, (Bankr. W.D. Pa. 2011) ("[A]n honest mistake or oversight is not sufficient to deny a debtor his discharge."). Furthermore, "Even a false statement resulting from ignorance or carelessness does not rise to the level of 'knowing and fraudulent' sufficient to deny a discharge." *Ciotti,* 448 B.R. at 704. A false oath is made 'knowingly' if the debtor makes it knowing it is false, or if it is made with reckless disregard for the truth. *Bielan, Miklos & Makrogiannis v. Vasquez,* No. ADVPRO 08-1409 (DHS), 2010 WL 1644175, at *7 (Bankr. D.N.J. Apr. 21, 2010).
>
> However, because courts recognize that a debtor will be reluctant to admit that he was motivated by fraud, they have permitted fraudulent intent to be inferred from circumstantial evidence or a course of conduct. *Spitko,* 357 B.R. at 301 (Bankr. E.D. Pa. 2006) (Citing *In re Olivier,* 819 F.2d 550, 553 (5th Cir. 1987); *In re Adeeb,*

787 F.2d 1339, 1343 (9th Cir. 1986); *Matter of Hughes,* 184 B.R. 902, 908 (Bankr. E.D. La. 1995)). "In establishing that a debtor acted with fraudulent intent, courts may look to circumstantial evidence and draw inferences from a course of conduct." *Bielan,* 2010 WL 1644175, at \*7 (citing *Scimeca v. Umanoff,* 169 B.R. 536, 542 (D.N.J. 1993)). Similarly, "Recklessness [towards the truth] can in turn be inferred where there is a 'series or pattern of errors or omissions' on a debtor's petition." *Id.* (citing *Spitko,* 357 B.R. at 318); *see also The Cadle Co. v. Zofko (In re Zofko),* 382 B.R. 45, 48 (Bankr. W.D. Pa. 2008) ("Multiple inaccuracies or falsehoods may rise to the level of reckless indifference to the truth, which is the functional equivalent of intent to deceive."). By contrast, a single omission or false statement without other evidence of knowledge or intent to defraud may not be enough to deny a debtor discharge under section 727(a)(4)(A). *See In re Belanger*, 524 B.R. 634 (Bankr. E.D. Pa. 2015) (ruling in the debtors' favor, despite the debtors' failure to disclose all their income on schedule I, and overstating several of their expenses on Schedule J, because the United States Trustee had not shown the debtors to have knowingly or intentionally made these false statements); *In re McKee*, No. 11-25717 MER, 2013 WL 49775, at \*5 (Bankr. D. Colo. Jan. 2, 2013), (holding that the debtor's failure to disclose her interest in a house, or list the income from the sale of that house on her Statement of Financial Affairs, or her interest in her ex-husband's bonus were due to honest mistakes, and not a reckless disregard of the truth or any intent to defraud creditors).

*In re Gallagher*, 13-26584-ABA, 2016 WL 4989942, at \*7-\*8 (Bankr. D.N.J. Sept. 9, 2016).

Whether a debtor has made a false oath within the meaning of § 727(a)(4)(A) is a question of fact. *In re Park* 2016 No. 13-34203, 2016 WL 693492, at \*3 (D.N.J. Feb. 18, 2016) (Citing, *Scimeca v. Umanoff*, 169 B.R. 536, 543 (D.NJ. 1993) aff'd sub nom. *In re Scimeca*, 30 F.3d 1488 (3d Cir. 1994)).

"In general, § 727 is to be construed liberally in favor of the debtor and strictly against those objecting to discharge." *In re Last*, 440 B.R. 642, 649 (Bankr. D.N.J. 2010) (citing *Rosen v. Bezner,* 996 F.2d 1527, 1531 (3rd Cir. 1993)). The plaintiff must prove its case by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991).

### A. The debtor made statements under oath and the statements were false

There is no question at this point that Mr. Formica filed a certification under oath that omitted disclosure of three liens on the Linwood Property. He also did not disclose the Fulton judgment lien in his schedules, which also constitutes a statement under oath, as all schedules are filed under penalty of perjury. [8] Fed. R. Bankr. P. 1008 (requiring declaration pursuant to 28 U.S.C.

---

[8] Parke also alleged that Mr. Formica intentionally failed to disclose his guarantee of "millions of dollars" of deficiency claims arising from the bankruptcies of three of his corporate entities, did not disclose a commercial mortgage on which he and his entity, John Galt, LLC, were joint mortgagors, and did not disclose the Nicolette mortgage on his schedules. Complaint, ¶¶ 29, 30, 32, 33, 50.

§ 1746); *In re Herchakowski*, ADV 11-1679, 2013 WL 620291, at *2 (Bankr. D.N.J. Feb. 19, 2013), *supplemented*, 10-49287, 2013 WL 1867991 (Bankr. D.N.J. Apr. 29, 2013) ("Courts consistently hold that '[a]ny false statement made in a bankruptcy petition, schedule or statement of financial affairs constitutes a false oath within the meaning of [s]ection 727(a)(4)(A).'") (quoting *Neugebauer v. Senese (In re Senese),* 245 B.R. 565, 574 (Bankr. N.D. Ill. 2000)). Thus, the first two elements of fraud are satisfied by these allegations, precluding summary judgment in Mr. Formica's favor. However, there are three more elements to consider.

### B. The debtor knew the statements were false

Parke alleged, but Mr. Formica denied, that Mr. Formica obtained a title report with a judgment search in connection with the November Sale. Complaint and Answer, ¶ 22.[9] This title report confirmed the existence of the Nicolette mortgage and Fulton judgment lien (the Ruth Formica mortgage was not executed until later in the month). *See* Complaint, ex. H.

But Mr. Formica admitted that on December 25, 2020, he spoke with Anthony Miranda, the owner of Nicolette Property Group, concerning how much of the December Sale proceeds would be used to pay down Nicolette's mortgage. Answer, ¶ 37. He also admitted that on January 14, 2021, the day he filed his Motion to Compel Sale, he requested a payoff from Fulton Bank on its judgment. Complaint, ¶ 45; *see also* ex. N.

Mr. Formica had granted the Ruth Formica mortgage on November 23, 2020, and it was recorded on December 8, 2020. Thus, Parke alleged that Mr. Formica's statement on January 16, 2021 that these liens had just recently come to his attention is "patently false." Complaint, ¶ 49. In response, Mr. Formica seemed to contradict earlier answers regarding the other two liens.

> The Debtor searched the public records online shortly before the bankruptcy petition was filed and the Ruth Formica mortgage did not appear. Accordingly, the Debtor reasonably believed that the mortgage he signed in her favor had not been recorded as of the date he filed his Chapter 7 petition. Additionally, the Debtor was not in possession of any information confirming that the Fulton judgment was a lien on title. As to the NPG mortgage, the Debtor did not sign that document and had no first hand knowledge that it had been recorded as a search of the public records under his name did not reveal it.

---

But Mr. Formica did disclose the deficiency claims on Schedule F, albeit with only one exception, all were disclosed in the amount of "$0" or "unknown." *See* Main Case Doc. No. 1, pp. 21-31. Regarding the commercial mortgage, Mr. Formica is only a guarantor, not a mortgagor, on that debt, as Parke appears to acknowledge in an earlier allegation. *See* Complaint, ¶ 15. Mr. Formica disclosed a non-priority unsecured debt owed to Parke, in an "unknown" amount, on his Schedule E/F. *See* Bankr. No. 20-23404-ABA, Doc. No. 1. Finally, as only Amy Formica was liable on the Nicolette mortgage, Mr. Formica was not required to disclose as Amy did not file bankruptcy with him.

[9] Many of Parke Bank's allegations, such as this one, are lodged against Ms. McDowell as well as Mr. Formica. However, as debtor's attorney, Ms. McDowell is not subject to section 727. Parke Bank did not ask for any relief against Ms. McDowell. Accordingly, the court will proceed as though Parke Bank's factual allegations are against Mr. Formica, only.

Answer, ¶ 49.

While the court has trouble believing that Mr. Formica, an experienced businessman, did not understand that the Fulton judgment was a lien, that his discussion with Mr. Miranda did not encompass that the obligation was a lien on the property, and that the Ruth Formica mortgage was a lien despite being unrecorded, it is not for the court on summary judgment to weigh the facts, but to determine whether there is a genuine issue of material fact, which these denials do.

### C. Mr. Formica omitted disclosure of the liens with fraudulent intent

Parke alleged that Mr. Formica's intent was to have the court approve a sale of the property under false pretenses, meriting denial of discharge pursuant to section 727(a)(4). Complaint, ¶¶ 53, 54. It alleged that Mr. Formica "intentionally failed to disclose Formica's guarantee and the millions of dollars of deficiency claims . . . and failed to disclose the Fulton Lien, the Nicolette Mortgage, and the Ruth Formica Mortgage so as to make it appear to the Trustee and the Court that the sale of the Property  would be of significant benefit to creditors." Complaint, ¶ 50.

Mr. Formica denied that he had

any "goal" other than to sell the Property as it had been listed for sale for eight months and the Debtor and his wife, Amy, had not received any higher offers. By way of further answer, the Debtor and his wife needed to sell the Property promptly as Amy Formica needed to qualify for a new mortgage by May of 2021 so that the [Nicolette] mortgage could be repaid by its maturity date.

Answer, ¶ 51. He points out that as soon as he became aware of the additional liens, he promptly notified the trustee and filed an Amended Certification.

Initially, the court acknowledges that when intent is an element, courts agree that summary judgment is "ordinarily inappropriate." *Vanguard Telecommunications, Inc. v. S. New England Tel. Co.*, 722 F. Supp. 1166, 1185 (D.N.J. 1989), *aff'd*, 900 F.2d 645 (3d Cir. 1990). *See Matter of 560 Ocean Club, L.P.*, 133 B.R. 310, 325 (Bankr. D.N.J. 1991) ("As a general proposition, questions involving intent, malice, conspiracy and the like should not be resolved by summary judgment.") (citing *Robertson v. Seidman & Seidman*, 609 F.2d 583, 591 (2nd Cir. 1979)). Thus, whether Mr. Formica intended to pull one over on the court or whether he was merely reckless in his disclosures and certification, is not a matter for the court on summary judgment. However, the court has difficulty with Parke's theory of Mr. Formica's intent.

That theory is that Mr. Formica purposely omitted mention of the additional liens against the property because two of those liens, the Nicolette and Ruth Formica ones, were liens granted by only one spouse instead of by both, as required to collect against property held by tenancy by the entireties. Mr. Formica wanted these obligations paid nevertheless, goes the theory, so he did not disclose them and then pushed to have the sale closed before anyone could object to the liens being paid. Paying the Ruth Formica claim would benefit Mr. Formica as it represented the amount

he owed on an otherwise nondischargeable alimony claim. Paying the Nicolette lien would help the Formicas refinance the Absecon Property.

In New Jersey, "[n]either spouse may sever, alienate, or otherwise affect their interest in the tenancy by entirety during the marriage or upon separation without the written consent of both spouses." N.J.S.A. 46:3-17.4. Mr. Formica claims he did not know of the Nicolette mortgage on the Linwood Property, supporting that he did not consent in writing to that, and there is no evidence that Amy Formica consented to the Ruth Formica mortgage in writing. Thus, neither was enforceable against the proceeds of the sale.

However, had the sale gone through without any other parties knowing about these liens—as Parke alleges was Mr. Formica's scheme—the proceeds of the sale would have been turned over to the chapter 7 trustee, not Mr. Formica. The Ruth Formica claim would be paid pro rata with other unsecured claims, and the Nicolette mortgage not at all. Thus, it is unclear how Parke's theory results in a fraud. Mr. Formica's original certification suggested that the sale would benefit the estate due to the substantial equity after paying just the Parke mortgage. The stated aim of the certification was to compel the trustee to sell the property, not for the trustee to abandon it. Only if the trustee instead abandoned the property would the Formicas be free to use the proceeds in any way they saw fit, regardless of a lien's enforceability.

A court may grant summary judgment despite genuine issues of material fact where the non-moving party has failed to make an adequate showing on an essential element of its case. Thus, despite the issues of fact, this element supports granting summary judgment in Mr. Formica's favor. No additional fact testimony (or discovery) changes that Parke's theory of intent is faulty.

### D. Materially related to the bankruptcy case

A similar problem arises with the last element: whether the alleged lies related materially to the bankruptcy case. Parke argued that the alleged lies related to property of the estate. That is true, however the test is whether the lies related materially to the bankruptcy case. As just explained, under Mr. Formica's original certification—where the alleged lies occurred—the Ruth Formica and Nicolette mortgages would not have been paid as claims against the Linwood Property. Parke then argued that the scheme really was to reveal the additional liens at the last minute, so that nobody could look into their avoidability and thus Mr. Formica could get them paid.

However, despite this apparent rush, in his response to the Motion to Compel the chapter 7 trustee recognized that he probably could avoid the Ruth Formica and Nicolette liens, leaving the Parke mortgage and the Fulton judgment lien.[10] But even with only paying two of the four

---

[10] This court will not delve into New Jersey law on whether the Fulton lien, based on a judgment against Mr., and not Mrs., Formica, could be enforced against the entireties property. The entireties statute cited above does not resolve the issue because it involves consensual, not involuntary, liens.

purported liens, the trustee indicated that rather than distribute those proceeds, he would instead have abandoned the property. Thus, *knowing of all three omitted liens*, the trustee would not have taken over the sale of the Linwood Property. Accordingly, there was no material effect on the bankruptcy case.

In the end, Parke failed to produce by a preponderance of the evidence that any statement made by Mr. Formica, credible or not or intentional or reckless, related materially to the bankruptcy case as is required under section 727(a)(4)(A). The statements did not impact the administration of the bankruptcy estate or cause the trustee to expend considerable time and money conducting investigations. Indeed, the fact that the trustee has shown no interest in, or participated in any way in this adversary proceeding, or has filed his own, leads the court to conclude that there was no impact on the estate or its creditors. What is more, despite the misrepresentations, the result would have been the same under any possible scenario—the trustee would have abandoned the property. Main Case Doc. No. 25. p. 1. There simply was no harm to the estate or its creditors. Reviewing these facts and construing section 727(a)(4) strictly against Parke, warrants a finding that summary judgment must be granted in this case.

## CONCLUSION

Given this legal conclusion, it matters not whether there are genuine issues of material fact. The trustee's written response to the Motion to Compel thwarts Parke's case. No additional fact discovery will aid Parke Bank.

Accordingly, Mr. Formica's Motion for Summary Judgment is granted.

An appropriate judgment has been entered consistent with this decision.

The court reserves the right to revise its findings of fact and conclusions of law.

<u>/s/ Andrew B. Altenburg, Jr.</u>
United States Bankruptcy Judge

Dated: December 8, 2021

---

Some New Jersey caselaw holds that such a judgment creditor holds a lien subject to the non-judgment debtor's right of survivorship. *See, e.g., In re Etoll*, 425 B.R. 743, 745 (Bankr. D.N.J. 2010). In other words, Fulton could enforce its lien only if (and when) Mrs. Formica predeceased Mr. Formica. Others hold that "A tenant by the entirety can alienate his or her right of survivorship, and a judgment creditor of either spouse may levy and execute upon such right. *In re Youmans*, 117 B.R. 113, 116–17 (Bankr. D.N.J. 1990) (citing *King v. Greene,* 30 N.J. 395, 412, 153 A.2d 49, 60 (1959)). The latter decision, though decided after the 1987 enactment of the New Jersey tenancy by the entireties statute, did not mention it, and relied on a decision issued decades prior to its enactment. *See In re Wanish*, 555 B.R. 496, 499 (Bankr. E.D. Pa. 2016) (applying New Jersey tenancy by entireties law and disagreeing with decisions relying on, *inter alia*, *King*).